UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SOUTHERN AUDIO SERVICES, INC.** | **CIVIL ACTION** |
| **VERSUS** | |
| **CARBON AUDIO, LLC, ET AL.** | **NO.: 15-00050-BAJ-SCR** |

## RULING AND ORDER

Before the Court is Defendants Headbox, LLC's and Licon Ventures, Inc.'s **Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 34)**, seeking an order dismissing Plaintiff's Second Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and 12(b)(6). Plaintiff filed an Opposition to Defendants' Motion. (Doc. 35). Defendants were then granted leave to file a Reply. (Doc. 38). Plaintiff has been denied leave to file a surreply. (Doc. 40). Oral argument is not necessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

I.  BACKGROUND

  A. **Plaintiff's initial Complaint**

On January 1, 2015, Plaintiff Southern Audio Services, Inc. ("Plaintiff") filed a Complaint for Breach of Contract against Defendant Carbon Audio, LLC ("Carbon"). (Doc. 1). Plaintiff's claim for breach of contract arises from a licensing agreement ("the Agreement") it entered into with Carbon on August 17, 2012. (Doc. 1-3 at pp. 1—7). Under the terms of the Agreement, Plaintiff, owner of the

1

"BAZOOKA" trademark for high-end audio equipment, permitted Carbon to register the "ZOOKA" trademark in connection with speakers it produced for computers and other small portable electronic devices. (*Id.* at pp. 1—2). Pursuant to the Agreement, Plaintiff asserted that Carbon was obligated to, *inter alia*, pay it royalties from the sale of ZOOKA products and not to "offer for sale or sell" any products without the ZOOKA trademark until certain royalty payments were made. (Doc. 1 at ¶¶ 19—25).

Plaintiff claimed in its Complaint that Carbon breached the Agreement in three ways: 1) by failing to make certain royalty payments; 2) by selling a new product—the "Pocket Speaker"—without the ZOOKA trademark before it made certain royalty payments; and 3) by licensing its intellectual property rights in the Pocket Speaker and other products to a third party in exchange for royalties before it made certain royalty payments. (*Id.* at ¶¶ 32—36). Plaintiff requested a monetary award of at least $450,000 to compensate it for unpaid royalties or to satisfy a minimum royalty payment it asserts was contemplated under the Agreement. (*Id.* at p. 6).

In addition to monetary damages—and central to the ultimate inclusion of Headbox, LLC ("Headbox") and Licon Ventures, Inc. ("Licon") (collectively, "Defendants") in this lawsuit—Plaintiff also requested an injunction preventing Carbon from selling the Pocket Speaker to third parties or licensing its intellectual property rights in the Pocket Speaker to third parties. (*Id.*). Carbon did not respond

to Plaintiff's lawsuit. Plaintiff then filed a Motion for Default Judgment, which included a proposed judgment that provided in pertinent part:

> Carbon Audio is enjoined from selling, or licensing any other party to sell, the Pocket Speaker product, or any other product covered by [the Agreement], until Carbon Audio . . . has satisfied all the monetary payment requirements of this Judgment. This injunction expressly covers any sales made under license, permission, or other authority granted by Carbon Audio, or in the name of Carbon Audio, to any third party selling the Pocket Speaker of an equivalent product. This injunction covers products currently sold by Monster, Inc. or by Headbox, Inc., to the extent such products are sold under license or other grant of rights from Carbon Audio or in the name of Carbon Audio.

(Doc. 11-7 at pp. 8—9).

Prior to a ruling on the Motion for Default Judgment against Carbon, Defendants filed a Motion to Intervene for the limited purpose of challenging the injunction. (Doc. 12). In the Motion to Intervene, Headbox asserted that it entered into a license agreement with Carbon in September 2013, which granted Headbox an exclusive, royalty-bearing license in the Pocket Speaker intellectual property. (*Id.* at p. 6). Licon asserted that it is Carbon's senior secured lender and that it foreclosed on all of Carbon's assets in April, 2014. (*Id.* at p. 7). Defendants asserted that Plaintiff's proposed injunction would impair their lawful interests. (*Id.* at p. 2).

Plaintiff did not oppose the Motion to Intervene, (Doc. 16), and the Motion was subsequently granted by the Magistrate Judge for the limited purpose of allowing Defendants the opportunity to file an opposition to Plaintiff's Motion for Default Judgment, (Doc. 17). After Defendants filed their limited opposition, (Doc. 18), Plaintiff filed a Second Amended Complaint naming them both as defendants

3

in the underlying lawsuit, (Doc. 22). In its Second Amended Complaint, Plaintiff added a breach of contract claim against Licon, (*Id*. at ¶¶ 123—131), a business enterprise or joint venture liability claim against Headbox, (*Id*. at ¶¶ 132—137), and a revocatory action claim against Licon, (*Id*. at ¶¶ 138—146).

### B. Plaintiff's Second Amended Complaint

Relative to these new claims, Plaintiff now asserts that sometime in April, 2013, Licon purchased an existing loan that was made to Carbon. (*Id*. at ¶¶ 94—96). In conjunction with this purchase, Plaintiff claims that Licon took security interests in Carbon's intellectual property, some of which were not perfected. (*Id*. at ¶¶ 96, 114, 117). On April 1, 2014, Plaintiff asserts that Licon obtained a transfer from Carbon of certain intellectual property. (*Id*. at ¶ 97). Plaintiff further claims that Licon accepted a transfer of all rights in the ZOOKA trademark on November 7, 2014. (*Id*. at ¶ 103). Plaintiff asserts that Carbon "made transfers of money or other property of value to [Licon] that either left [Carbon] insolvent or worsened [Carbon's] existing insolvency." (*Id*. at ¶ 110).

In the midst of these transactions, Plaintiff asserts that on September 17, 2013, Carbon and Headbox "entered into an agreement that effectively transferred all of [Carbon's] active business operations to Headbox." (*Id*. at ¶ 71). Following this agreement, Plaintiff asserts that Headbox and Carbon "essentially became a single business enterprise or a joint venture for the purpose of developing and selling all active products that [Carbon] had previously developed." (*Id*. at ¶ 81). Plaintiff further asserts that Licon was a named third-party beneficiary of the agreement

4

between Headbox and Carbon, and that Licon received at least a portion of the $250,000 Headbox paid to Carbon under the September 17, 2013 agreement. (*Id.* at ¶¶ 90, 92).

## II.  STANDARD OF REVIEW

When a nonresident defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985). In deciding a motion to dismiss for lack of personal jurisdiction, courts within the United States Court of Appeals for the Fifth Circuit accept the plaintiff's allegations as true, other than those which are conclusory or controverted, and conflicts between the parties' facts are resolved in the plaintiff's favor. *Panda Brandywine v. Potomac,* 253 F.3d 865, 868 (5th Cir. 2001).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a Rule 12(b)(6) motion, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto." *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*Bell Atl. Corp. v. Twombly,* 550 U.S. 544,

5

570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (*Twombly*, 550 U.S. at 556).

Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

The Supreme Court has noted that Rule 12(b)(6) requires dismissal whenever a claim is based on an invalid legal theory:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory, or on a close but ultimately unavailing one.

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (quotation marks and citations omitted). However, "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. \_\_\_, \_\_\_, 135 S. Ct. 346, 346 (2014) (per curiam).

6

## III. DISCUSSION

Plaintiff asserts four claims in its Second Amended Complaint: 1) breach of contract by Carbon Audio; 2) breach of contract by Licon; 3) a single business enterprise or joint venture liability claim against Headbox; and 4) a revocatory action claim against Licon. (Doc. 22 at pp. 13—17). Prior to addressing each of these claims, this Court first addresses Defendants' assertion that their limited intervention, (Docs. 12, 17—18), did not subject them to personal jurisdiction in this case, (Doc. 34-1 at pp. 30—36).

### A. 12(b)(2) Personal Jurisdiction

Unlike subject matter jurisdiction, jurisdiction over the person can be waived. *Cactus Pipe & Supply Co. v. M/V Montmartre,* 756 F.2d 1103, 1107 (5th Cir. 1985). A party can consent to jurisdiction by making an appearance. *Id.* at pp. 1107—08. "Generally, an appearance in an action involves some presentation or submission to the court. An appearance may result from the filing of an answer without raising jurisdictional defects. An appearance may also arise by implication from a defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to plaintiff other than one contesting only the jurisdiction or by reason of some act or proceedings recognizing the case as in court." *Id.* at 1108 (citations omitted).

Plaintiff asserts that personal jurisdiction is proper over Defendants because they both filed a motion to intervene in this action under Rule 24, (Doc. 12), and in so doing, voluntarily subjected themselves to this Court's jurisdiction. (Doc. 22 at

pp. 3—4; Doc. 35 at pp. 8—10).[1] Plaintiff asserts that Fifth Circuit precedent instructs that a party who intervenes in an action voluntarily consents to jurisdiction, even if the party doesn't fully intervene. (Doc. 35 at p. 8). Plaintiff cites *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 786—87 (5th Cir. 1990), wherein the Fifth Circuit found that the intervening parties there, "waived any objection to the jurisdiction of the court" because "they came voluntarily into court and joined with the [named Defendant] in seeking dismissal of the injunctive action." *Id.* at 787. Plaintiff also cites language in *Cactus*, wherein the Fifth Circuit cited with approval *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972) for the proposition that, "if a party enters a case and fails to object to jurisdiction, and requests the court to do some affirmative act on its behalf in some substantive way, the party will be held to have waived further objection."

Defendants assert that Plaintiff, "induced their intervention by seeking a baseless injunction aimed directly at them" in its original Complaint. (Doc. 34-1 at p. 32). Defendants contend that under these circumstances, a limited intervention is not tantamount to consent to personal jurisdiction. Defendants rely heavily on *S.E.C. v. Ross*, 504 F.3d 1130 (9th Cir. 2007), wherein the Ninth Circuit, "decline[d] to adopt a per-se rule that an intervenor consents to the court's personal jurisdiction," and instructed, "[w]e do not think that anything in the Federal Rules suggests that a non-named party cannot intervene of right and then contest the

---

[1] Plaintiff has not asserted that Defendants have purposefully availed themselves to the State of Louisiana by establishing minimum contacts here. (Doc. 22 at ¶¶ 30—37); *Int'l Shoe co. v. Washington*, 326 U.S. 310, 316 (1945).

8

federal court's exercise of personam jurisdiction." *Id*. at pp. 1148, 1150; (Doc. 34-1 at pp. 33—34).

*Ross* was preceded by a lawsuit in which the Securities and Exchange Commission brought a civil enforcement action against a telecommunications company, the company's sole owner, and the company's sales and marketing partners for the sale of unregistered securities. *S.E.C. v. Alpha Telcom, Inc.*, 187 F. Supp. 2d 1250 (D. Or. 2002). The District Court granted equitable relief against the company and its owner in the form of a permanent injunction and disgorgement. *Id*. at 1263. A court appointed receiver moved to disgorge $21 million in commissions on the sales of the unregistered securities from the company's sales agents. *Ross*, 504 F.3d at 1134. Several agents moved to intervene because the receiver was attempting to adjudicate their personal liability. *Id*. at 1135. The District Court allowed the agents to intervene, after which they asserted the defense of lack of personal jurisdiction. *Id*. at 1135—36. The District Court found jurisdiction proper over the agents for reasons other than their intervention. *Id*. The Ninth Circuit disagreed with those reasons and also concluded that the agents' intervention did not result in consent to personal jurisdiction.

> In reaching its conclusion, the Ninth Circuit observed:

Few courts have directly addressed whether a non-party who intervenes in ongoing proceedings pursuant to Rule 24(a)(2) can raise personal jurisdiction objections in conjunction with a motion to intervene. However, those that have addressed this question have generally concluded that a party who intervenes, consents, as a matter of law, to the jurisdiction of the court permitting the intervention. *See In re Bayshore Ford Truck Sales, Inc.,* 471 F.3d 1233 (11th Cir.2006); *County Sec. Agency v. Ohio Dept. of Commerce,* 296 F.3d 477 (6th

> Cir.2002); *Pharm. Research & Mfrs. v. Thompson,* 259 F.Supp.2d 39 (D.D.C.2003); *City of Santa Clara v. Kleppe,* 428 F.Supp. 315, 317 (N.D.Cal.1976). *Wright and Miller* concurs in this view: "[T]he intervenor submits himself to the personal jurisdiction of the court by seeking to intervene in the action and cannot move to dismiss on that ground." 7C Wright, Miller & Kane, Federal Practice and Procedure, Civil 3D § 1920, at 612 (3d ed.2007) (citing *Kleppe,* 428 F.Supp. 315).

*Id*. at p. 1148. The Ninth Circuit opined that, after "devot[ing] little space to analyzing this issue," the Eleventh and Sixth Circuit have held that parties who intervene necessarily acquiesce to jurisdiction. *Id*. at 1148 (*citing Ford*, 471 F.3d at 1248; *Country Sec. Agency*, 296 F.3d at 483). Unpersuaded, the Ninth Circuit concluded that intervention of right, "simply puts the intervenor into the position he would have been in had the plaintiff (or another party) properly named him to begin with," so a challenge to personal jurisdiction is proper. *Id*. at 1150.

Defendants urge this Court to follow the reasoning expressed in *Ross* because it is consistent with principles of due process, and because it is the most recent and persuasive authority on this issue. (Doc. 34-1 at p. 35). Defendants further assert that the Fifth Circuit has not squarely addressed this issue, (Doc. 34-1 at p. 32), and that the decisions of other Circuit courts that have addressed this issue cite to outdated Ninth Circuit precedent. *See Country Sec. Agency*, 296 F.3d 477; *Ford*, 471 F.3d 1233; *Gradel v. Piranha Capital, L.P.*, 495 F.3d 729 (7th Cir. 2007). Lastly, Defendants cite a case from the Eastern District of Texas wherein the court found that an intervening party was not precluded from requesting a transfer of venue. *TiVo Inc. v. AT&T Inc.*, No. 2:09-CV-259, 2010 WL 10922068 (E.D. Tex. Mar. 31,

2010). By analogy, Defendants argue that personal jurisdiction should be treated the same. (Doc. 34-1 at p. 36).

This Court finds that Defendants have consented to the exercise of personal jurisdiction in this proceeding. In light of Fifth Circuit precedent set forth, *supra*, Defendant's reliance on *Ross* goes too far. Simply put, a voluntary appearance, by intervention or otherwise, has been viewed as an act of consent to personal jurisdiction in this Circuit. *Cactus* 756 F.2d 1103, 1107; *Trans World Airlines, Inc.*, 897 F.2d 773, 786—87. The three judge panel in *Ross* qualified its decision with an admission that the weight of federal jurisprudence on this issue equates intervention with acquiescence to personal jurisdiction. *Ross*, 504 F.3d at 1148 ("However, those [courts] that have addressed this question have generally concluded that a party who intervenes, consents, as a matter of law, to the jurisdiction of the court permitting the intervention.").

Furthermore, this Court recognizes that Defendants did not raise the issue of personal jurisdiction in their Motion to Intervene. (*See* Doc. 12). Once Defendants were allowed to intervene, they again did not raise the issue of personal jurisdiction in their Limited Opposition to Plaintiff's Motion for Default Judgment. (*See* Doc. 18). Unlike the assertion in *Ross* that the intervening party there "objected to in personam jurisdiction as effectively as [he] could have" at every turn, *Ross*, 504 F.3d at 1149, Defendants here waited until after they voluntarily appeared to raise the issue of personal jurisdiction. This Court is persuaded that Defendants' voluntary

11

appearances in this case operated as consent to jurisdiction. *Cactus* 756 F.2d 1103, 1107; *Trans World Airlines, Inc.*, 897 F.2d 773, 786—87.

Accordingly, this Court finds that exercise of personal jurisdiction is proper over Defendants. As a result, Defendants' Motion to Dismiss under Rule 12(b)(2) is **DENIED**.

### B. 12(b)(6) Failure to State a Claim

Plaintiff's first claim is for breach of contract against Carbon. (Doc. 22 at ¶¶ 118—122). Although the relief sought in conjunction with Plaintiff's first claim is what prompted Defendants to intervene, Defendants do not directly address this claim in their Motion to Dismiss. (*See* Doc. 34).

1. *Breach of Contract by Licon*

Defendants assert that Plaintiff's second claim for breach of contract by Licon cannot state a plausible claim for relief. (Doc. 34-1 at p. 18). In its Second Amended Complaint, Plaintiff asserts that Licon accepted an assignment from Carbon of Carbon's rights in the ZOOKA trademark. (Doc. 22 at ¶¶ 103, 124). At the time of the assignment, Plaintiff asserts that Licon was aware of the Agreement. (*Id*. at ¶ 99). Plaintiff further asserts that the Agreement permitted Carbon to assign its rights in the ZOOKA trademark subject to the requirement that any assignee would be bound by its terms and conditions. (*Id*. at ¶ 125). Because it is bound by the terms of the Agreement, Plaintiff asserts that Licon, like Carbon, breached the obligation to pay royalties and breached the obligation to refrain from selling certain products until minimum royalty payments were made. (*Id*. at ¶¶ 128—129).

Plaintiff further asserts that Licon breached the Agreement by licensing another party the right to sell a version of the Pocket Speaker. (*Id.* at ¶ 130).

Licon counters that it was not a party to the Agreement and never agreed to be bound by it. (Doc. 34-1 at p. 18). Invoking Article 9 § 9-622 of the Uniformed Commercial Code ("Article 9"), Licon asserts that as Carbon's senior secured creditor, it lawfully foreclosed on Carbon's assets, including the ZOOKA trademark, free of any associated liabilities. (*Id.*). Under LA CIV. CODE ART. 1821, Licon also asserts that a party to a contract can only seek relief from a third party if there has been an express assumption in writing, which Plaintiff does not allege existed. (*Id.*). In sum, Licon maintains that "[Plaintiff] has not alleged, and cannot plausibly allege, that Licon, a secured creditor, assumed Carbon's pre-existing, unsecured debt—let alone that it did so in writing." (*Id.* at 21).

Plaintiff asserts that Carbon did not own unrestricted rights in the ZOOKA trademark and as a consequence, Licon could not acquire rights broader than those enjoyed by Carbon. (Doc. 22 at ¶¶ 124—125; Doc. 35 at p. 16). Accepting the veracity of Plaintiff's well-pleaded factual allegations, this Court is satisfied that they plausibly give rise to an entitlement to relief for breach of contract against Licon. Accordingly, Defendants' Motion to Dismiss Plaintiff's breach of contract claim against Licon is **DENIED**.

2. *Single Business Enterprise or Joint Venture Liability*

Defendants assert that Plaintiff has not plausibly stated a claim for relief against Headbox under a single business enterprise or joint venture theory of

13

liability. (Doc. 34-1 at pp. 26—41). In its Second Amended Complaint, Plaintiff asserts that Carbon and Headbox entered into an agreement on September 17, 2013 that "purported to give Headbox an exclusive, irrevocable license to develop and sell all Carbon Audio products except the ZOOKA speaker." (Doc. 22 at ¶ 74). At the time Carbon and Headbox entered into their agreement, Plaintiff claims that Carbon had discontinued the ZOOKA speaker such that it effectively transferred its entire active business to Headbox. (*Id.* at ¶¶ 75—76, 83). Plaintiff further asserts that Carbon and Headbox shared executives and shared revenue for a period of time after they entered into their licensing agreement, (*Id.* at ¶¶ 84—85), and that Headbox had, "almost complete control over Carbon" under the licensing agreement, (*Id.* at ¶ 88). For the purposes of Defendants' Motion to Dismiss, Plaintiff concedes that Delaware law applies to these two claims. (Doc. 35 at p. 6 n. 10).

To determine if a joint venture is established under Delaware law, Plaintiff and Defendants both cite *Warren v. Goldinger Bros., Inc.*, 414 A.2d 507, 509 (Del.1980), wherein the Supreme Court of Delaware held that to create a joint venture, "there must be (1) a community of interest in the performance of a common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits, (5) [and] a duty to share in the losses which may be sustained." (Doc. 35 at p. 13; Doc. 34-1 at pp. 26—27). Defendants assert that Plaintiff's joint venture claim must fail because it has not pled facts to satisfy each of the *Warren* elements. (Doc. 34-1 at p. 26). Alternatively,

Defendants assert that even if a joint venture was created, Headbox is not liable for any debt Carbon incurred unrelated to the venture. (Doc. 34-1 at p. 29).

Accepting the veracity of Plaintiff's well-pleaded factual allegations, this Court finds that Plaintiff has pled sufficient facts to give rise to a reasonable inference that a joint venture may have been created. (*See* Doc. 22 at ¶¶ 74—76, 81, 83—86). Furthermore, this Court finds that a reasonable inference may be drawn that the relief Plaintiff seeks is related to any such venture. (*See* Doc. 22 at ¶ 135). Accordingly, Defendants' Motion to Dismiss Plaintiff's joint venture claim is **DENIED**. To the extent Defendants treat Plaintiff's joint venture claim as indistinguishable from its single business enterprise claim, Defendants' Motion to Dismiss Plaintiff's single business enterprise claim is similarly **DENIED**.[2]

3. *Revocatory Action against Licon*

Defendants assert that Plaintiff has not plausibly stated a claim for relief against Licon under a revocatory action pursuant to LA CIV. CODE ART. 2036.[3] In its Second Amended Complaint, Plaintiff asserts that certain transfers of Carbon's assets to Licon increased Carbon's insolvency or caused it to become insolvent. (Doc. 22 at ¶ 143). Furthermore, Plaintiff asserts that Licon did not comply with Article 9 requirements, because it included secured property with unsecured property in a single asset transfer. (*Id.* at ¶ 141). Consequently, Plaintiff claims that any transfer

---

[2] Given Defendants' treatment of these two claims as largely one and the same, this Court declines to engage in an in-depth analysis of any difference between the two at this stage of this proceeding.

[3] LA CIV. CODE ART. 2036 provides: "An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency."

of the ZOOKA trademark to Licon was not protected by Article 9. (Doc. 22 at ¶ 141; Doc. 35 at p. 19).

Defendants seek to dismiss Plaintiff's revocatory action on three primary grounds. First, Defendants assert that Plaintiff seeks to unwind, by way of LA CIV. CODE ART. 2036, a foreclosure that was executed in Oregon, under Oregon law, between two Delaware entities. (Doc. 34-1 at pp. 21—22). Under these circumstances, Defendants maintain that Louisiana law cannot support Plaintiff's claim. (*Id*.).[4] Second, Defendants assert that Licon's secured status—whether perfected or unperfected—defeats Plaintiff's claim even if Louisiana law applies to this dispute. (*Id*. at pp. 22—23). Defendants claim that Plaintiff concedes that assets transferred to Licon were subject to security agreements. (Doc. 34-1 at p. 22 *citing* Doc. 22 at ¶¶ 96, 114). In connection with this assertion, Defendants maintain that Plaintiff improperly conflates a secured interest with a perfected secured interest. (Doc. 34-1 at p. 22). Lastly, Defendants assert that the asset transfers at issue cannot be annulled because they did not increase Carbon's insolvency. (Doc. 34-1 at p. 23). Defendants assert that Plaintiff has not claimed that the value of the assets Licon received exceeded the value of the debt that was extinguished. (*Id*.).

This Court's review of the facts pled in Plaintiff's Second Amended Complaint indicate that Licon accepted money transfers or other property from Carbon at a

---

[4] Some choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss. In this case, however, the Court will defer its choice-of-law decision until the parties present a factual record sufficient to permit this Court to undertake Louisiana's choice of law analysis. *See* LA CIV. CODE ART. 3537; 3542.

16

time when Plaintiff asserts Carbon owed it money under the Agreement. Accepting the veracity of Plaintiff's well-pleaded factual allegations, this Court finds that they plausibly give rise to an entitlement to relief under LA CIV. CODE ART. 2036. Accordingly, Defendants' Motion to Dismiss Plaintiff's revocatory action is **DENIED.**

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 34)** is **DENIED.**

Baton Rouge, Louisiana, this 28th day of October, 2015.

_____
**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**